IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Patty L. Shackleford,

    Plaintiff,

  v.                                   Case No. 2:12-cv-398

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant.

ORDER

    Plaintiff, Patty L. Shackleford, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income. This matter is before the court for consideration of plaintiff's June 21, 2013, Objections (Doc. 21) to the June 6, 2013, report and recommendation of the magistrate judge (Doc. 20), recommending that the court affirm the decision of the Commissioner. For the reasons stated below, the court overrules plaintiff's objections and adopts the magistrate judge's report and recommendation.

I. Standard of Review

    If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

II. Objections

A. Weight Accorded to Dr. Hamill's Opinions

Plaintiff first objects to the magistrate judge's evaluation of the decision of the administrative law judge ("ALJ") to assign "little weight" to the opinions of Dr. J. Mark Hamill, M.D.,

2

plaintiff's treating psychiatrist.  *See* PAGEID 75.

The opinion of a treating source must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §404.1527(c)(2).  Even if the opinion of a treating source is not entitled to controlling weight, an ALJ is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

An ALJ must also provide "good reasons" for discounting the opinion of a treating source, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5).  This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

3

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. §404.1527(d)(2)).

In the decision of April 19, 2011, the ALJ commented on the first three factors, including the length, nature and extent of the treatment relationship, the frequency of examination, and the medical specialty of the treating physician. The ALJ noted that Dr. Hamill was plaintiff's treating psychiatrist, and that plaintiff's mental health treatment consisted of intermittent visits which began on December 4, 2008. PAGEID 72. The ALJ noted that Dr. Hamill evaluated plaintiff on December 4, 2008, and that, based on plaintiff's subjective responses, Dr. Hamill gave the diagnosis of bipolar disorder, manic, severe with psychotic features, and prescribed the mood stabilizer Abilify, and reduced plaintiff's Wellbutrin SR. PAGEID 67. The ALJ further remarked:

> The record indicates that the claimant has had intermittent medication management appointments with Dr. Hamill as well as counseling appointments with various mental health counselors at Scioto Valley Mental Health Center. (EX B41F). The most recent treatment records from Dr. Hamill, on September 14, 2010, indicate that the claimant had not reported any psychotic symptoms and her medication was working okay for her. (EX B44F, pg 2). Dr. Hamill also noted a diagnosis of schizoaffective disorder. Id.

PAGEID 67.

The ALJ also addressed the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. The ALJ noted that Dr. Hamill's diagnosis was based on plaintiff's subjective responses to his questions during the evaluation. PAGEID 67. The ALJ remarked that plaintiff never had a psychiatric hospitalization and "has not had the type of treatment one would expect for someone whose alleged symptoms include auditory hallucinations." PAGEID 72. The ALJ also noted

that although plaintiff was forty-eight years old at the time of the hearing, she had only received substantive mental health treatment with a psychiatrist in the last two years despite her complaints of auditory hallucinations, and that prior to seeing Dr. Hamill, her mental health treatment consisted of taking various anti-depressant medications prescribed by her family physician. *Id.* The ALJ commented that "at least on one occasion, the claimant was more concerned about her weight than in alleviating her mental health symptoms. (EX B44F, pg 2)." *Id.*

After summarizing the opinion of Dr. Hamill concerning plaintiff's limitations, the ALJ stated:

> I find that Dr. Hamill's opinion is not supported by the evidence in the record. Specifically, Dr. Hamill's opinion about the claimant's extreme limitation in the area of concentration, persistence, or pace contrasts sharply with the other evidence of record, especially the claimant's activities of daily living where she cares for at least five young grandchildren and an ailing daughter, which renders it less persuasive. In addition, ... Dr. Hamill almost exclusively relies on the claimant's subjective report of her symptoms and limitations. This is even more disconcerting because the claimant does not have a significant mental health treatment history despite her extreme allegations of auditory hallucinations. Also, the claimant admitted at hearing that she omits material information about her symptoms to Dr. Hamill for fear that he might change her medication. Lastly, while Dr. Hamill does have a treating relationship with the claimant, the treatment history has been brief and intermittent and primarily consists of medication management. I give Dr. Hamill's opinion little weight.

PAGEID 74-75.

In reviewing the ALJ's analysis of Dr. Hamill's opinion, the magistrate judge concluded:

> The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Hamill's medical

5

> opinion and the reasons for assigning that weight. Although the analysis of the individual factors may be succinct, it is clear that the administrative law judge considered each of the factors listed in 20 C.F.R. §§404.1527(c)(2)-(6) and 416.927(c)(2)-(6); a formulaic recitation of the factors is not required under the circumstances. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). Further, the administrative law judge's reasons for assigning "little weight" to Dr. Hamill's opinion are supported by substantial evidence.
>
> Because the administrative law judge correctly applied the standards of the treating physician rule to her evaluation of Dr. Hamill's opinions, and because substantial evidence supports her findings, the Court finds no error with the Commissioner's decision in this regard.

Doc. 20, pp. 17-18.

This court agrees with the magistrate judge's analysis and conclusion that the ALJ correctly applied the standards of the treating physician rule in evaluating Dr. Hamill's opinions. The ALJ cited "good reasons" for discounting Dr. Hamill's opinions and correctly applied the appropriate factors. The ALJ's decision sufficiently described the weight which the ALJ gave to Dr. Hamill's medical opinions and the reasons for that weight so as to permit an informed review by this court. In addition, this court concludes that the reasons the ALJ set forth for the weight she assigned to Dr. Hamill's opinion are supported by substantial evidence.

B. Listing 1.02A

Plaintiff also objects to the conclusion of the magistrate judge that the ALJ correctly determined that plaintiff does not

meet the requirements of Listing 1.02.  Plaintiff argues that the evidence as a whole supports her argument that she cannot walk a block at a reasonable pace on rough or uneven surfaces.

Listing 1.02 requires, under appropriate circumstances, a finding of disability based on a major dysfunction of a joint:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §1.02.

Listing 1.00B2b states:

> (1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.... (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk

> independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, Appx. 1 §100B2b.

The ALJ determined, based on the available medical evidence, that plaintiff's osteoarthritis of the right knee did not meet or equal the requirements in Listing 1.02. *PAGEID* 68. The ALJ further found that the evidence concerning plaintiff's right knee and degenerative disc disease involving the cervical, thoracic and lumbar spine did not demonstrate that plaintiff had the degree of difficulty in ambulating as defined in Listing 1.00B2b. *Id*.

The magistrate judge found that there was substantial evidence in the record to support the ALJ's determination that plaintiff does not meet Listing 1.02. Doc. 20, p. 20. The magistrate judge noted that plaintiff had knee surgeries in January and February 2009, and further observed that while some treatment records dated 2008-2010 indicated that plaintiff experienced knee pain before and after these surgeries, in other records during this period plaintiff was reported as walking with a normal gate and without difficulty. *Id.* The magistrate judge also observed that there was no evidence that plaintiff had ever used a walker, two crutches, or two canes, and that there was no medical opinion in the record that plaintiff was unable to walk to the degree required by the listing or that her combination of impairments met the listing. Doc. 20, p. 21.

The magistrate judge then looked to evidence concerning plaintiff's daily activities which suggested that plaintiff was able to ambulate effectively, including the fact that plaintiff climbs stairs, walks four to five blocks, organizes her house for

8

seven to eight hours per day, does dishes and laundry, cooks dinner, takes out the trash, bends to put items in cabinets, drives to the grocery store weekly, babysits with her five grandchildren and takes them to doctor's appointments. *Id*. The magistrate judge also noted that plaintiff helped her daughter move for fourteen hours in a single day in 2009. *Id*. The magistrate judge concluded that plaintiff had not shown that she satisfies the requirements of Listing 1.02, in that "there is no evidence that plaintiff has an 'extreme limitation of the ability to walk' that 'interferes very seriously with [her] ability to independently initiate, sustain, or complete activities.'"  Doc. 20, p. 22.

In her objections, plaintiff disputes the finding of the magistrate judge that "[t]here is also no evidence to support plaintiff's argument ... that she cannot 'walk a block at a reasonable pace on rough or uneven surfaces.'"  Doc. 20, p. 22. Plaintiff relies on a physical capacity evaluation completed by Dr. Frazier on December 7, 2005, on which he noted that plaintiff could stand no more than five minutes before needing to sit, and that plaintiff must "use an assistive device (i.e. cane)" to walk and balance.   See PAGEID 851.   This exhibit says nothing about plaintiff using "a walker, two crutches or two canes," nor does it indicate that she was unable "to walk a block at a reasonable pace on rough or uneven surfaces" as required to satisfy Listing 1.00B2b.  Further, this evaluation was completed several years before plaintiff's knee surgeries in 2009.  The magistrate judge cited more relevant post-surgery evidence that plaintiff was able to ambulate without difficulty following her knee surgery.  Doc. 20, p. 20.

9

The court agrees with the finding of the magistrate judge that there is no evidence that plaintiff has an "extreme limitation of the ability to walk" that "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities."  The court concludes that the ALJ's decision that plaintiff failed to satisfy the requirements of Listing 1.02 is substantially supported by the evidence of record.

III. Conclusion

Having reviewed the record *de novo*, the court determines that there is substantial evidence supporting the ALJ's determination that plaintiff is not disabled, as defined in the Social Security Act. Accordingly, the court overrules plaintiff's objections (Doc. 21) and adopts the magistrate judge's report and recommendation (Doc. 20).  The Commissioner's decision is affirmed, and this action is dismissed.

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.

It is so ordered.

Date:  August 7, 2013            _____s/James L. Graham_____
                                 James L. Graham
                                 United States District Judge

10